Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 0374 | **DATE** | January 5, 2004 |
| **CASE TITLE** | *Miller v. Potter* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' Motion for Summary Judgment [R. 20-1] is granted. This court directs the clerk of the court to enter Rule 58 judgment and terminate this case from the court's docket. Enter Memorandum and Order.

(11) ■ [For further detail see memorandum and order attached to original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | DEC X 6 2003 date docketed | |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| RTS/s | courtroom deputy's initials | | JAN -6 PM 8:03 | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLARENCE MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 02 C 0374 |
| v. ) | |
| ) | Hon. Blanche M. Manning |
| JOHN E. POTTER, Postmaster General ) | |
| of the United States Postal Service, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Clarence Miller ("Miller"), filed a one count complaint against John Potter, Postmaster General of the United States Postal Service ("defendant" or "USPS") for disability discrimination under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* Miller alleges that the USPS violated the Rehabilitation Act because defendant's stated reason for discharging him from his position as a city mail carrier was pretext for discrimination. Presently before the court is the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, the defendant's motion for summary judgment is granted.

## I. BACKGROUND[1]

The USPS offered Miller a job as a city mail carrier on September 15, 1999, effective September 25, 1999. As part of the application process, the USPS asked Miller to submit to a drug screening and to fill out a Medical History Questionnaire. When Miller completed the

---

[1] The facts in the background section are derived from the parties' Local Rule 56.1 statements and other pleadings. The facts in the parties' statements that are not controverted are deemed admitted. *See Smith v. Lamz,* 321 F.3d 660, 683 (7th Cir. 2003). Responses that do not cite to specific references to the affidavits, parts of the record, and other supporting materials are subject to the court's discretion as to their admission. *See Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir. 1997).

Medical History Questionnaire, he signed a form that stated "all the information to be given by me in connection with this assessment will be correct to the best of my knowledge and belief." When asked – Have you, or has anyone on your behalf, ever filed an injured-on duty claim for a work related injury? – Miller answered yes. Elaborating upon his answer, Miller stated that he suffered a back injury while employed by the Chicago Housing Authority ("CHA") in 1993 and that he had been off work for two to three weeks due to that injury. When applying for employment at the USPS, Miller did not provide any information that placed his physical suitability for employment into question.

Miller began work as a city mail carrier on September 25, 1999, which was also the date his 90 day probationary period began. It was routine to cross-check new employees' injury compensation history against the records of the Illinois Industrial Commission. After the United States Postal Inspection Service checked the records of the Illinois Industrial Commission, it found that Miller had not provided accurate and complete information when filling out his Medical History Questionnaire. Specifically, Miller had filed a second worker's compensation claim against the CHA in 1994, which he had failed to disclose in his USPS employment application.

On December 6, 1999, Contract Fraud Analysts for the Inspection Service questioned Miller. Miller acknowledged that he may have forgotten about the second compensation claim, in which he was off work for over thirteen weeks while still employed by the CHA, because he had also been in an automobile accident around that same time. Miller also admitted that he had been off work for seven weeks for the first worker's compensation claim, not the two or three weeks that he originally stated in his USPS employment application.

The Inspection Service reported its findings to the USPS's Manager of Human Resources in a letter dated December 9, 1999. A Labor Relations Specialist received this report and recommended to his supervisor, the Manager of Labor Relations, that Miller be terminated for falsifying his employment application. The Manager of Labor Relations sent Miller a letter dated December 13, 1999, notifying him that he would be terminated effective December 17, 1999, for providing false and incomplete answers in his Medical History Questionnaire.

On December 27, 1999, Miller contacted the EEOC. On April 17, 2000, Miller filed a formal EEOC complaint alleging that he was discriminated against based on an actual or perceived disability. After a full hearing, the administrative judge found that Miller was not disabled within the meaning of the Rehabilitation Act and further found no discrimination in the USPS's action to terminate Miller. In his complaint to this court, Miller alleges that his termination by the USPS violated the Rehabilitation Act because defendant's stated reasons for discharging him from his position as a city mail carrier were pretext for discrimination based upon his record of physical impairment due to prior back injuries. Presently, the USPS moves for summary judgment contending that Miller is not disabled as defined under the Rehabilitation Act.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This court must evaluate the admissible evidence supporting the summary judgment motion in a light most

favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading"; but rather, must respond with "specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322.

**B.     Rehabilitation Act**

Because the Rehabilitation Act is the counterpart to the American with Disabilities Act of 1990 ("ADA") for government agency defendants, the standards set out in the ADA are used to determine whether the Rehabilitation Act has been violated. *See Dyrek v. Garvey*, 334 F.3d 590, 597 n.3 (7th Cir. 2003); *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002). As such, the *McDonnell Douglas* burden shifting method of establishing discriminatory intent is applicable under the Rehabilitation Act. *See Dyrek*, 334 F.3d at 598. Under this methodology, Miller bears the initial burden of establishing a *prima facie* case of employment discrimination. *See id.* Once Miller has established a *prima facie* case, the burden shifts to the defendant to articulate a non-discriminatory explanation for its employment decision. *See id.* Miller then must produce evidence that his former employer's stated explanation was mere pretext for the discriminatory decision. *See id.*

Here, the USPS contends that Miller has not met the first element of a *prima facie* case of discrimination, that is, that he is disabled as defined under the Rehabilitation Act. Under the Rehabilitation Act a "qualified individual with a disability" is defined as an individual who: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment by his employer. *See Peters*, 311 F.3d at 842. Simply put, to fall within this definition an individual

4

must have an actual disability, have a record of a disability, or be regarded as having a disability. *See Sutton v. United Air Lines,* 527 U.S. 471, 478 (1999). Miller argues that he has a record of back injuries under the second definition of disability and that the USPS regarded him as disabled under the third definition.

### 1. Record of Impairment

First, Miller contends that the records reflecting his temporary disability pay for seven weeks during 1993 and thirteen weeks during 1994 are sufficient to constitute a record of impairment under the Rehabilitation Act. The USPS, however, argues that Miller's previous back injuries do not constitute a record of impairment because these injuries are not permanent and do not substantially limit one or more life activities.

A record of impairment must contain a history of a mental or physical impairment that "substantially limits one or more major life activities." *See Peters,* 311 F.3d at 842. A medical diagnosis or proof of an injury alone does not establish a "record of impairment," instead the effect of the impairment on the individual is determinative. *See Sutton,* 527 U.S. at 483; *see also Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198 (2002) (individual must offer evidence that limitation is substantial in terms of his own experience). In *Toyota Motor,* the Supreme Court held that the proper inquiry in determining whether an impairment substantially limits a major life activity is that the "individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *See id.*

Miller claims that his former back injuries impose a substantial limitation on the major life activity of working. With regard to the major life activity of working, "substantially limits" means that the individual is significantly restricted in the ability to perform a class of jobs or a

5

broad range of jobs in various classes. *See Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002). Under this standard, Miller has the burden of presenting evidence that demonstrates that his former back injuries limit his ability to perform a broad class of jobs. *See id.* (citing *Sutton*, 527 U.S at 491).

Miller has failed in his burden of demonstrating that his former back injuries substantially limit the major life activity of working. For instance, he has not presented evidence to support the conclusion that he is precluded from a broad class of jobs. *See id.* In fact, consistent with the representations he made in his employment application to the USPS, Miller could perform his job duties without any apparent physical or medical limitations or restrictions. Moreover, Miller never requested any accommodation to a physical or medical condition during his employment with the USPS. In addition, in his employment application Miller also represented to the USPS that he suffered from temporary back injuries rather than a permanent, long term condition. *See Toyota Motors*, 534 U.S. at 198. Therefore, Miller's records concerning his worker's compensation for former back injuries alone do not established that he is disabled under the definition that he has a record of an impairment that substantially limits him from the major life activity of working. *See Peters*, 311 F.3d at 842. As such, Miller has not established that there is a genuine issue of material fact for trial regarding whether he was a "qualified individual with a disability" under this definition. *See Celotex*, 477 U.S. at 322.

### 2. Regarded as Disabled

Next, Miller claims that the USPS incorrectly regarded him and other employees who had a history of worker's compensation claims for back injuries as unsuitable for the major life activity of working. The USPS, on the other hand, argues that it perceived Miller as qualified and able to perform the duties of a mail carrier, which includes numerous demanding physical

6

tasks. Under the "regarded as" definition of disability, a plaintiff must show that: (1) the employer mistakenly believes the employee has a physical impairment that substantially limits a major life activity; or (2) the employer mistakenly believes that an actual, non-limiting impairment substantially limits a major life activity. *See id.* at 843; *see also School Bd. of Nassau County v. Arline,* 480 U.S. 273, 283 (1987) ("Such an impairment might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others to the impairment."). In essence, Miller must establish that the USPS believed that his former back injuries substantially limited a major life activity. *See Sutton,* 527 U.S. at 489.

Again, Miller points to the major life activity of working. Although Miller claims that the USPS incorrectly regarded Miller and other employees who had a history of worker's compensation claims for back injuries as unsuitable for the major life activity of working, Miller has not pointed to "specific facts showing that there is a genuine issue for trial." *See Celotex,* 477 U.S. at 322. In fact, there is no evidence in the record before this court that suggests that the USPS believed Miller's back injury rendered him unable to perform the duties of his work. Instead, there is ample evidence that the USPS regarded Miller as able and qualified to perform the duties of a mail carrier, which includes such tasks as heavy lifting, moderate carrying, reaching above the shoulder, walking, and standing.

Because Miller has not met his burden of establishing the first element of a *prima facie* case of discrimination under the Rehabilitation Act, this court need not consider the remaining elements of Miller's *prima facie* case, nor whether the USPS's reason for terminating Miller was pretext for discrimination. *See Brummet v. Lee Enter., Inc.,* 284 F.3d 742, 744 (7th Cir. 2002)

7

(plaintiff must establish each element of *prima facie* case before it becomes necessary to reach the issue of pretext).

III. **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment [R. 20-1] is granted. This court directs the clerk of the court to enter Rule 58 judgment and terminate this case from the court's docket.


ENTER:

_____
Blanche M. Manning
United States District Court Judge

DATE: January 5, 2004